**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

JANAE D. BRISSETT,                                           Case No.

                       Plaintiff,                      **COMPLAINT**

       -against-


                                         **Plaintiff Demands a Trial by Jury**

WESTHAB, INC., and YANIS AVILES,

                       Defendants.
------------------------------------------------------------X

      Plaintiff Janae D. Brissett ("Plaintiff Brissett" or "Brissett"), by her attorneys, Akin Law Group, PLLC, as and for their Complaint against Defendants Westhab, Inc., (hereinafter, "Defendant Westhab" or "Westhab"), and Yanis Aviles ("Defendant Aviles", "Aviles", or "Yanis") (collectively, "Defendants"), upon information and belief, alleges as follows:

**PRELIMINARY STATEMENT**

1.    The Defendants discriminated against Plaintiff Brissett on the basis of her **race**, **sex**, and **pregnancy** and subjected Brissett to a hostile work environment.  Further, the Defendants retaliated against Plaintiff Brissett after and as a result of her complaints of Defendants' discriminatory conduct.

2.    More specifically, in this action for monetary damages, Defendants violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§2000e-2000e-17 et seq. as amended), by unlawfully discriminating against the Plaintiff and creating a hostile work environment on the basis of her **race**, **sex**, and **pregnancy** and by retaliating against the Plaintiff for complaining about said discrimination, in violation of §704(a) of the Civil Rights Act of 1964, as amended.

3.    Plaintiff also brings causes of actions pursuant to the New York State Human Rights Law, Executive Law § 296 et seq., and the Administrative Code of the City of New York § 8-101 et seq. for **race**, **sex**, and **pregnancy** discrimination, hostile work environment and retaliation.

1

## JURISDICTION AND VENUE

4.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the causes of actions brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§2000e-2000e-17 et seq.) and supplemental jurisdiction over the New York State and New York City law claims, as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5.     Venue is appropriate under 28 U.S.C. § 1391 (b) and (c) (Substantial Part of the Events and Contacts), as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, the Defendant regularly conducts business in this district and the Defendant is subject to personal jurisdiction in this district.

## EXHAUSTION OF REMEDIES

6.     On October 29, 2021, Plaintiff duly filed a complaint with New York State Division of Human Rights ("NYSDHR"), Case Number: 10214133-21-E-DRSONFP-E, on the basis of **Race/Color**, **Opposed Discrimination/Retaliation**, **National Origin**, **Disability**, **Pregnancy-related Condition**, **Sex**, **Familial Status**.

7.     On April 29, 2022, the NYSDHR issued a Determination After Investigation. After investigation, the Division determined that **PROBABLE CAUSE** exists to believe that the Westhab and Yanis have engaged in or are engaging in the aforementioned unlawful discriminatory practice.

8.     On June 23, 2022, Brissett respectfully requested that her claims be dismissed from the NYSDHR for administrative convenience, so that she may be allowed to pursue her claims privately by way of litigation.

9.     On July 7, 2022, the NYSDHR issued a Notice and Final Order, granting Brissett's request of dismissal for administrative convenience.

10.    On July 8, 2022, Brissett requested a right to sue letter from the Equal Employment

Opportunity Commission ("EEOC") so that she may file a lawsuit against the Westhab and Yanis under federal law in federal court.

11.     On September 15, 2022, the EEOC issued Brissett a right to sue letter.

12.     Plaintiff has exhausted her administrative remedies and files this Complaint within 90 days of the EEOC's issuance of her Notice of Right to Sue, satisfying all procedural prerequisites for bringing this action.

## PARTIES

**Plaintiff Brissett**

13.     At all times during her employment with Defendants, Plaintiff Janae D. Brissett (hereinafter, "Plaintiff Brissett" or "Brissett") was a resident of Westchester County, New York.

14.     At the time of the filing of this action, Plaintiff Brissett is an individual residing in New Haven County, Connecticut.

15.     Brissett is an African American woman.

16.     At all times relevant to this action, Brissett was an employee of Defendants within the meaning of all applicable statutes.

**Defendant Westhab**

17.     Defendant Westhab, Inc. ("Westhab" or the "Company") was and is a domestic not-for-profit corporation duly organized and existing under and by virtue of the laws of the State of New York.

18.     Westhab was and is authorized to conduct business in the State of New York.

19.     Westhab was and is involved in "developing affordable and supportive housing, operating homeless shelters, and providing youth programs and employment services."

**Defendant Yanis Aviles**

20.     Yanis Aviles ("Defendant Aviles", "Aviles", or "Yanis"), upon information and belief, was and is a resident of the State of New York.

21.     Upon information and belief, Aviles was and is Hispanic.

22.     Aviles was an employee of Westhab.

23.     Aviles was employed by Westhab as a Housing Coordinator.

24.     Aviles was employed by Westhab as a Housing Coordinator at 8 Bashford Street, Yonkers NY 10701.

25.     Aviles was Brissett's direct supervisor during her employment with Westhab.

26.     In that role, Aviles had the authority to discipline Brissett, direct her work activities, assign her job responsibilities, monitor her performance, and recommend her termination.

## **FACTS**

27.     On or about October 30, 2017, Brissett commenced her employment with Westhab.

28.     Brissett was employed by Westhab as a Housing and Employment Manager and as an Employment Counselor.

29.     Brissett worked for Westhab at 8 Bashford Street, Yonkers NY 10701.

30.     Brissett worked in the Housing Independence Through Employment Program ("HITE"), a program which directly placed Westhab's clients in occupations.

31.     In that role, Brissett regularly visited clients and assisted them in seeking employment opportunities.

32.     On or about February 2021, Aviles was assigned as Brissett's supervisor.

Race Discrimination

33.     From the onset of Aviles' supervision, Aviles began to discriminate against Brissett by treating her less favorably compared to her Hispanic counterparts.

34.     Under Aviles' supervision, Brissett was given nine additional clients, four of whom spoke only Spanish.

35.     Brissett's new clients were previously assigned to Nicholas Rosa, Director and Angel Gorrido,

case manager, who are Hispanic.

36.   Upon reviewing the files for her newly assigned clients, five of the nine clients were neglected by their pervious case managers for six to nine months.

37.   Furthermore, these clients did not have any recent updates, documents or notes within Westhab's system.

38.   Brissett informed Aviles and Jesse Johnson, Aviles' supervisor, about the issues with her newly assigned clients.

39.   Nonetheless, Aviles did not reprimand any Hispanic employees for failing to maintain accurate records of Westhab's clients; instead, Aviles instructed Brissett to complete the work of other Hispanic employees by forging missing documents in order to conceal the mistakes of the Hispanic employees.

40.   Additionally, Brissett had problems communicating with some of her clients because they only spoke Spanish and Brissett only spoke English.

41.   Brissett would request assistance from Aviles, since Aviles spoke Spanish, so that she may be able to complete the incomplete files.

42.   Aviles would become irritated with Brissett's requests for translation help.

43.   Brissett asked Aviles if those clients who spoke Spanish could be transferred to a case manager who also spoke Spanish.

44.   Aviles would refuse and reject Brissett's request and demand that she continues to work with those clients, stating that she would just have to deal with it.

45.    Brissett would use Google's translator to communicate with her clients, which would often lead to misunderstanding and confusion.

46.   Furthermore, the use of a translator would frequently slow down Brissett's pace of work.

47.   Aviles subjected Brissett to less favorable treatment as compared to her Hispanic counterparts.

48.     By way of example, Aviles would request Brissett to work after hours, sometimes at night, without compensation.

49.     By way of another example, Aviles would intentionally speak Spanish with other Hispanic case managers which caused Brissett to feel like an outcast.

50.     Aviles would intentionally speak Spanish around Brissett even though she was aware that Brissett only spoke English.

51.     By way of another example, Aviles informed Brissett that she was not allowed to eat her breakfast at the office or at her desk and that she is to finish eating before 9:00 a.m.

52.     Nevertheless, Hispanic employees, and even Aviles herself, would eat breakfast in the office or at their desks frequently but were not reprimanded.

53.     In addition, Aviles would intentionally and wrongfully accuse Brissett of completing her work inaccurately.

54.     These accusations were peculiar as Brissett had been working for Westhab for four years, and has not been accused of completely work inaccurately by any other supervisor.

55.     By way of another example, Aviles would give Brissett improper and incorrect instructions in an attempt to sabotage Brissett's work performance, while she gave the proper and correct instructions to Hispanic employees.

56.     For instance, Aviles would instruct Brissett to not have clients sign any visitation documents even though it was common practice for clients to sign these documents. Often times, Brissett would receive the proper instructions by other coworkers.

57.     Aviles would instruct Plaintiff Brissett to take pictures of her visitations in order to prove that she visited the client.

58.     Brissett would take pictures of the street, the client's home, and her parking spot.

59.     During one visitation, Mayra Garcia, another Hispanic case manager, accompanied Brissett

6

during a visit to a client who only spoke Spanish.

60.     Mayra witnessed Brissett take pictures of her surroundings.

61.     Mayra asked Brissett why Brissett was taking pictures of the surrounding.

62.     Brissett responded by stating that she was under the belief that all employees had to document their visits with pictures, to which Mayra responded stating that was not true.

63.     Upon belief and information, Hispanic case managers were not required to take pictures of their surroundings while visiting the clients and were not required to submit any proof., while African American case managers (like Brissett) were required to.

64.     It was common practice for Aviles to accompany other Hispanic employees to a client's residence when the employee felt unsafe.  Aviles refused to accompany Brissett when she would make this request, despite promising to do so.

65.     More specifically, in approximately April 2021, Brissett visited one of her newly assigned clients, S.A. (full name omitted for confidentiality purposes).

66.     Before Brissett visited S.A., she attempted to contact him by phone.

67.     Brissett realized that S.A.'s file had been neglected by the pervious case manager, and had not been updated for an entire year.

68.     When Brissett was able to come into contact with S.A., S.A. informed her that his house was uninhabitable. He stated that he had severe leakage throughout his apartment and could not use the restroom. He further stated that Westhab had not reached out to him.

69.     Westhab considered S.A. a problematic client due to the nature of his character.

70.     Brissett attempted to visit S.A. by herself to resolve the incomplete files left to her by the Hispanic case managers.

71.     When Brissett arrived at S.A.'s residence, she immediately felt unsafe.

72.     S.A.'s apartment was dark, with the windows covered with blankets so that light could not

enter.  Brissett asked S.A. to turn the lights on but he refused.

73.     S.A. was tall and of a larger build. He would hover over Brissett and refused to move away when asked.

74.     Brissett felt unsafe and uncomfortable being alone with S.A.

75.     Brissett left S.A.'s home and went back to Westhab's office to report what she had experienced and witnessed to Aviles.

76.     Brissett also reported that she felt unsafe in the environment, especially since she was pregnant at the time.

77.     Instead of assisting Brissett, Aviles demanded that Brissett visit S.A. every week until all of his issues were resolved, even though she knew Brissett did not feel safe.

78.     Aviles stated that she would accompany Brissett on the next visit and directed Brissett to schedule another visit.

79.     Approximately one week later, Brissett arrived at S.A.'s home and waited for Aviles to arrive.

80.     Aviles never came and therefore Brissett had to meet with the client by herself once again, putting herself and her unborn child in possible danger.

81.     Once again, Brissett informed Aviles that she did not feel safe visiting S.A.'s home by herself and requested that Aviles or another employee accompany her.

82.     Aviles dismissed Brissett's concerns for her safety while smirking at her.

83.     Brissett constantly expressed her concerns about her safety to Aviles, also informing her that she did not want to put any risk to her unborn child.

84.     Once again, Aviles informed Brissett that she would accompany Brissett during the next visitation, which was scheduled for June 1, 2021.

85.     Yet again, Aviles failed to appear, leaving Brissett to be alone with S.A.

86.     Brissett experienced extreme mental anguish due to Aviles failing to deliver on her promise

8

to accompany her to S.A.'s home.

87.     After Brissett communicated with Aviles once again about her concerns, Aviles responded by asking her why she was so scared and began to laugh.

88.     On June 1, 2021, Brissett wrote an email to Jinja Cuevas, Westhab President of Human Resources, and Richard Nightingale ("Nightingale"), the Chief Executive Officer, to complain about the unlawful race discrimination and disparate treatment she had been faced to endure.

89.     Specifically, Brissett wrote in-part, "I have faced racism here at Westhab more than once, at first I wasn't sure if it was malice, discrimination or just unprofessionalism… I've had black colleagues who decided to depart from Westhab rather than to speak on the issue because we all fear the uncomfortable truth that racism is alive and well in America and it is being done by other people of color in power."

90.     Richard Nightingale arranged a meeting for Brissett with Jinja Cuevas ("Cuevas") – Vice President of Human Resources and Lattysha Rivera ("Rivera").

91.     During this meeting, both Cuevas and Rivera reassured Brissett, stating that she would not face retaliation in response to her complaint.

92.     During this meeting, Brissett informed both Cuevas and Rivera about her pregnancy and that Aviles was intentionally making her employment at Westhab difficult.

Retaliation

93.     Unfortunately, almost immediately, Brissett faced retaliation by Aviles for complaining about the discrimination.

94.     Aviles began to be more aggressive towards Brissett in retaliation for Brissett's complaints about discrimination.

95.     Additionally, Brissett was ostracized by the other Hispanic employees and managers at Westhab.

96.     Moreover, Brissett was put under heavier scrutiny and was continually accused of not doing her work correctly.

97.     Only two days after the meeting, Brissett complained to Cuevas about the retaliation she had been experiencing due to her complaints of discrimination.

98.     Furthermore, Brissett also requested to speak with the Nightingale and Rivera as well but was denied this request.

99.     Instead of considering the validity of Brissett's complaints, Cuevas was extremely dismissive during the second meeting and ignored Brissett's pleas of retaliation.

100.    Once again, Brissett asked to be placed under the supervision of another supervisor but was denied this request.

101.    Brissett also requested that she be placed in a different position she was qualified for at Westhab in order to avoid Aviles; however, this request was denied as well.

102.    When this request was denied, Brissett asked to work as a custodian member in an attempt to not work with Aviles but this request was denied as well.

103.    Cuevas indicated that a transfer would not resolve the issue and that she should just try to work things out.

104.    Brissett requested to speak with Jesse Johnson, Aviles' direct supervisor, in order to further complain about the discrimination, but was denied this request as well.

105.    Aviles continued her retaliation against Brissett for complaining about the discrimination, all the way until Brissett's constructive termination.

106.    For instance, from June 2021 through August 2021, Brissett witnessed Aviles steal documents from her desk, misplace her files and mishandle folders in an attempt to sabotage her files so that she may reprimand her.

107.    Brissett saved her files in a backup drive so Aviles' plan to sabotage her would be ineffective.

108.    Aviles continued to assist other Hispanic case managers with their clients and continued to ignore Brissett's request for assistance.

109.    Aviles began to interview Brissett's clients and attempted to pressure Brissett's clients to complain about Brissett's services.

110.    Mayra Garcia asked Brissett which clients Aviles could reach out to, suggesting that she name some clients Westhab could contact.

111.    Brissett responded by indicating that all her clients appreciate her services as their case manager.

112.    Brissett's clients would contact her and inform her that her supervisor was looking for any issues they may have had with Brissett.

113.    Even though Brissett's clients responded with positive feedback, the damage to Brissett's reputation and relationship had already been done.

114.    Brissett reached out to Human Resources, communicating how difficult Aviles was making her employment at Westhab.

115.    Again, Brissett asked to switch positions or to be assigned a new supervisor but was denied once more.

116.    On or about August 23, 2021, due to the ongoing discrimination and retaliation, Brissett went on vacation.

117.    During this time, S.A. was attempting to contact Brissett about the issues he was experiencing at his apartment.

118.    Brissett informed Westhab that S.A. was attempting to contact her, and that someone had to inform him that she is on vacation.

119.    Brissett returned to work on or around September 7, 2021, and immediately reached out to S.A. upon returning to the office.

120.    When S.A. picked up the phone, he began using profanity against her, stating that he was ignored during an emergency.

121.    Further, S.A. stated that he had spoken to Brissett's supervisor, Aviles, and that he was told he should continue to call Brissett, even though Aviles knew she was on vacation.

122.    Aviles intentionally refused to assist S.A. while Brissett was on vacation, in an attempt to sabotage her client relationship.

123.    Aviles submitted a detailed note in S.A.'s file – stating that Brissett had not been working with the client nor providing the client with assistance.

124.    Brissett reached out to Human Resources to provide documentation – demonstrating that Brissett was working with S.A. and that Aviles was attempting to tarnish her reputation.

125.    Subsequently, Brissett had a meeting Jinja Cuevas, Vice President of Human Resources and Jesse Johnson ("Johnson"), Aviles' supervisor.

126.    Brissett complained about the discrimination and retaliation she had been enduring from Aviles.

127.    During this meeting, both Cuevas and Johnson were both rude and dismissive.

128.    In fact, during this meeting, Cuevas and Johnson both gave Brissett a disciplinary warning and a write-up for recording a conversation with a client, even though it was common practice for Westhab to record clients.

129.    Brissett received an additional write-up for not visiting S.A. as well, the client Brissett was not comfortable seeing herself due to feeling unsafe.

130.    Cuevas stated not visiting a client for three months was completely unacceptable, and in violation of Westhab company policy.

131.    Brissett protested the write-up, stating that not only did she visit S.A. but she regularly kept in contact with him through phone calls.

132.    Additionally, Brissett mentioned that Nicholas Rosa and Angel Garrido, both Hispanic coworkers, had not seen their clients for over six months and were not given the same disciplinary write-up she received.

133.    Brissett asked if Aviles would face disciplinary action for the discriminatory and retaliatory conduct but received no answer.

134.    During this meeting, Brissett asked again if she could work under a different supervisor but was again denied this request.

135.    Brissett did not understand why her request to transfer to work under a different supervisor was denied.

136.    After protesting, Westhab assigned Mayra Garcia as Brissett's supervisor but this did not resolve any of Brissett's complaints.

137.    It was evident to Brissett that Westhab had more of an interest protecting Aviles than addressing Brissett's complaints of discrimination.

138.    Brissett fell into a deep depressive state due to the systematic discrimination and retaliation she continued to experience at Westhab.

139.    Brissett stopped eating healthy, stopped communicating with family, and stopped caring for herself.

140.    Brissett was the sole provider for her family, she could not resign from her position at Westhab even though she wanted too.

141.    Brissett cried as she commuted to work as she felt trapped and helpless as she continued to work in the discriminatory environment.

Pregnancy Discrimination

142.    Furthermore, since Brissett was pregnant, she was also receiving maternity benefits from Westhab.

143.   Aviles denied basic pregnancy-related accommodation requests made by Brissett.

144.   For instance, Brissett requested that she meet clients on the ground floor as opposed to a higher floor where she would have to climb stairs (which was difficult for Brissett due to her pregnancy).

145.   Aviles denied this reasonable accommodation request, even though Westhab would not face undue hardship.

146.   Additionally, Aviles began to deny Brissett from going on any breaks – causing Brissett to work through lunch, while pregnant.

147.   On or around September 2021, Brissett began to experience issues with her paycheck - which added to the stress and anxiety of working at Westhab.

148.   On or around September 2021, Brissett had a mental breakdown, which was witnessed by Mayra Garcia.

149.   Mayra, another Hispanic senior case manager, could not relate to the issues Brissett was experiencing since Mayra was Hispanic and was treated more favorably than Brissett.

150.   Mayra, as well as other Hispanic employees, were aware of the more favorably treatment they were receiving by Aviles.

151.   On or around October 2021, Brissett was advised by her health care provider that she should go on bedrest, due to the mental anguish she had been experiencing because of the discrimination and retaliation.

152.   On or around November 1, 2021, Brissett returned to the office, with the clearance of her health care provider.

153.   Even though Brissett did not want to return to the office, Brissett had no other choice because she was the sole provider for her family.

154.   Upon her return to the office, Brissett's realized her desk had been tampered with and multiple documents were missing from Brissett's desk.

14

155.    Mayra informed Brissett that Aviles wanted her to rearrange Brissett's binders.

156.    Upon information and belief, Aviles tempered with Brissett's documents while she was on vacation in another attempt to sabotage her work performance.

157.    On or about November 2021, Brissett called in sick around 3:00 or 4:00 a.m. via email to Aviles, as that was common practice at Westhab.

158.    That same day, around 11:00 a.m., Mayra kept calling Brissett's phone, and when Brissett answered – Mayra asked where she was, why she did not notify Westhab and that Aviles did not know where she was.

159.    Brissett responded by stating that she did in fact inform Aviles that she would be taking a sick day, and that she notified Westhab four hours before her shift.

160.    Brissett thereafter forwarded the original email she sent Aviles to Mayra, and Mayra hung up the phone.

161.    Moreover, Brissett submitted a doctor's note for her absence.

162.    Upon Brissett's return, she was placed under "supervision" and had to report to Mayra for daily updates.

163.    Mayra indicated to Brissett that Aviles had a list of tasks that Brissett needed to finish.

164.    While going through the task list – Brissett informed Mayra that everything on the list had already been completed.

165.    Brissett asked to be removed form supervision as she had no issues competing the tasks she was assigned to do, but Aviles refused to take Brissett off supervision.

166.    Mayra also indicated to Brissett that her email, notifying Westhab about her sick day, was sent to Aviles' spam email and that she should not send emails there.

167.    Brissett had no control over where her email is sent – Aviles intentionally ignored Brissett's email in an attempt to find pretextual reasons to terminate her employment.

15

168.    Due to the ongoing discrimination and retaliation, Brissett was placed back on bedrest and remained on bedrest until her due date, December 29, 2021.

169.    Unable to bare the discrimination and retaliation any further, Brissett was constructively terminated from Westhab on or about November 19, 2021.

170.    Brissett is now scared and paranoid when placed in large groups or singled out, especially she is near a group of the same people of the same race.

171.    Brissett experiences panic attacks and continued depression.

172.    Brissett is currently treating and receiving therapy through Lotus Counseling i for Post-Traumatic Stress Disorder and Depression due to the discrimination she experienced.

173.    Additionally, Brissett is on medication to help with her nightmares and panic attacks.

174.    The NYSDHR reviewed a list of all employee supervised by Aviles from January 1, 2021 to January 31, 2022. This list disclosed 25 employees. Of these 25 employees, 17 are African American. Of these 25 employees, 15 were terminated. Of the 15 that were terminated, 12 of African American and three are Hispanic.

175.    The NYSDHR noted that of the 17 African American employees who were supervised by Yanis, as of April 2022, only five are currently still employed.

### FIRST CAUSE OF ACTION
### Discrimination Pursuant to Title VII of the Civil Rights Act
### *Against Defendant Westhab*

176.    Plaintiff Brissett repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

177.    By the actions described above, among others, Defendants have discriminated against Plaintiff Brissett because of race, sex, and pregnancy in violation of Title VII.

178.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages.

## SECOND CAUSE OF ACTION
### Hostile Work Environment Pursuant to Title VII of the Civil Rights Act
*Against Defendant Westhab*

179.    Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

180.    By the actions described above, among others, Defendants have discriminated against Plaintiff and created a hostile work environment because of her race, sex, and pregnancy, in violation of Title VII.

181.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## THIRD CAUSE OF ACTION
### Retaliation Pursuant to Title VII of the Civil Rights Act
*Against Defendant Westhab*

182.    Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

183.    By the actions described above, among others, Defendants have retaliated against Plaintiff in violation of Title VII for engaging in protected activity of complaining about the discrimination.

184.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## FOURTH CAUSE OF ACTIO
### Discrimination Pursuant to the New York State Human Rights Law
*Against All Defendants*

185.    Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

186.    Executive Law § 296 provides that it shall be an unlawful discriminatory practice: (a) For an

17

employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, genetic predisposition or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

187.    Defendants engaged in an unlawful discriminatory practice in violation of New York Executive Law by forcing Plaintiff's transfer to a less convenient work location, forcing Plaintiff to accept a less favorable schedule, creating and maintaining discriminatory working conditions and a hostile work environment, discriminating against the Plaintiff because of her race, sex, and pregnancy otherwise subjecting the Plaintiff to a hostile work environment.

188.    That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

### FIFTH CAUSE OF ACTION
**Hostile Work Environment Pursuant to the New York State Human Rights Law**
***Against All Defendants***

189.    Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

190.    Executive Law § 296 provides that it shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, genetic predisposition or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

191.    By the actions described above, among others, Defendants have discriminated against Plaintiff and created a hostile work environment because of her race, sex, and pregnancy.

192.    That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## SIXTH CAUSE OF ACTION
### Retaliation Pursuant to the New York State Human Rights Law
### *Against All Defendants*

193.    Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

194.    New York State Executive Law § 296 (7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

195.    Defendants engaged in an unlawful discriminatory practice by retaliating, continuing and escalating the discrimination and hostile work environment to which the Plaintiff was subjected, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

196.    Defendants engaged in an unlawful discriminatory practice by retaliating against the Plaintiff for making a complaint regarding Defendants' violation of New York State Executive Law.

197.    That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## SEVENTH CAUSE OF ACTION
### Discrimination Pursuant to the New York City Human Rights Law
### *Against All Defendants*

198.    Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

199.    The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice:  "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual

orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

200.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by forcing Plaintiff's transfer to a less convenient work location, forcing Plaintiff to accept a less favorable schedule, creating and maintaining discriminatory working conditions and a hostile work environment, discriminating against the Plaintiff because of her race, sex, and pregnancy, and otherwise subjecting the Plaintiff to a hostile work environment.

201.     That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

**EIGHTH CAUSE OF ACTION**
**Hostile Work Environment Pursuant to the New York City Human Rights Law**
***Against All Defendants***

202.     Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

203.     The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice:  "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

204.     By the actions described above, among others, Defendants have discriminated against Plaintiff and created a hostile work environment because of her race, sex, and pregnancy, in violation of New York City Administrative Code. That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## NINTH CAUSE OF ACTION
### Retaliation Pursuant to the New York City Human Rights Law
### *Against All Defendants*

205.   Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

206.   The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

207.   Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, § 8-107(1)(e) by retaliating, continuing and escalating the discrimination and hostile work environment to which the Plaintiff was subjected, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

208.   Defendants engaged in an unlawful discriminatory practice by retaliating against the Plaintiff for making a complaint regarding Defendants' violation of New York City Administrative Code.

209.   That as a direct result of the foregoing, the Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## PRAYER FOR RELIEF

   **WHEREFORE**, Plaintiff prays for relief as follows:

A.   Declaring that the Defendants engaged in unlawful employment practice prohibited by federal and state common law, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e *et seq.,* New York State Executive Law §296 et. seq. and the New York City Administrative Code Title 8, §8-107 et. seq.; and that the Defendants harassed,

discriminated against, and retaliated against Plaintiff Brissett on the basis of her sex/gender and awarding Plaintiff a recovery for damages sustained;

B.   Awarding damages to the Plaintiff Brissett, retroactive to the date any such damages were initially incurred, for all lost wages, overtime pay, and benefits resulting from Defendants' unlawful employment practices in an amount that exceeds the jurisdictional limit of all lower courts;

C.   Awarding Plaintiff Brissett compensatory damages for her mental and emotional injuries in an amount that exceeds the jurisdictional limit of all lower courts;

D.   Directing Defendants to place Plaintiff Brissett in the position she would have occupied but for defendants' discriminatory and retaliatory and unlawful conduct and making the Plaintiff Brissett whole for all earnings and other benefits she would have received but for Defendants' discriminatory and retaliatory treatment, including, but not limited to, title, seniority status, wages and other lost benefits;

E.   Awarding Plaintiff Brissett punitive damages;

F.   Awarding Plaintiff Brissett attorney's fees, costs and expenses; and

G.   Awarding Plaintiff Brissett such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: October 10, 2022
      New York, New York

                     **Akin Law Group PLLC**

                     */s/ Robert D. Salaman*
                     _____
                     Robert D. Salaman
                     45 Broadway, Suite 1420
                     New York, NY 10006
                     (212) 825-1400
                     rob@akinlaws.com

                     *Counsel for Plaintiff*